# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

KENNETH L. WILLIAMS,

               Petitioner,

     v.                                            Case No. 08-CV-01

WILLIAM POLLARD,

               Respondent.

_____

## ORDER

On January 2, 2008, petitioner Kenneth Williams ("Williams") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his May 8, 2002 conviction in the Brown County Circuit Court for first-degree intentional homicide and two counts of armed robbery. For the reasons stated below, the court is obliged to deny the petition.

## BACKGROUND

On March 20, 2002, a jury convicted Williams of two counts of first-degree intentional homicide and two counts of armed robbery. On May 8, 2002, the Brown County Circuit Court entered its judgment of conviction and sentenced Williams to life imprisonment. Nearly two years later, on January 9, 2004, Williams filed a post-conviction motion with the circuit court. After the circuit court denied this motion, Williams appealed to the Wisconsin Court of Appeals which affirmed the circuit court's decision. Williams then appealed to the Wisconsin Supreme Court and, on February 9, 2005, Williams's petition for review was denied. Williams continued

challenging his state court conviction by filing another motion for post-conviction relief pursuant to Wis. Stat. § 974.06. This motion was denied by the circuit court and by both the Wisconsin Court of Appeals and the Wisconsin Supreme Court on appeal. Williams then timely filed this petition for a writ of habeas corpus in federal court. Both parties agree that Williams exhausted his state court remedies with respect to the claims asserted in his habeas corpus petition and that the Wisconsin state courts addressed all of Williams's claims on the merits, therefore, he has not procedurally defaulted any of his habeas claims.

In support of his petition, Williams raises the following issues: (1) the circuit court abused its discretion when it denied his motion for a free copy of the transcript from his co-defendant's trial and his co-defendant's pretrial statements; (2) trial and post-conviction counsel provided ineffective assistance; (3) the state violated his right to due process when the prosecutor relied upon inconsistent theories to convict him and his co-defendant; and (4) he was denied his Sixth Amendment right to present a defense and to confront the witnesses against him.

In an April 22, 2008 order (Docket #3), this court noted that there is no constitutional right to counsel in state post-conviction proceedings and "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman v. Thompson*, 501 U.S. 722, 752 (1991). Furthermore, § 2254(I) provides that, "the ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(I). Therefore, Williams's claim in this

respect does not entitle him to relief. The court will consider Williams's remaining claims in turn.

## ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, governs the grant of a writ of habeas corpus. Under § 2254(d), if a constitutional claim was adjudicated on the merits by the state courts, a federal court may only grant habeas relief based on that claim if the state court's decision is "contrary to" or "an unreasonable application of" clearly established federal law as determined by the U.S. Supreme Court, or if the state court's determination of the facts was unreasonable in light of the evidence presented.

A state court's decision is "contrary to" federal law if the state court applied the wrong standard or decided a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Brown v. Finnan*, 598 F.3d 416, 421-22 (7th Cir. 2010). Moreover, a state court's decision is an unreasonable application of clearly established federal law "when a state court identifies the correct governing legal rule but unreasonably applies it to the facts of a case or if the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context in which it should not apply or unreasonably refuses to extend that principle to a new context in which it should apply." *Id.* at 422. In other words, if the petitioner challenges a state court's application of governing federal law, the decision "must be shown to not only be erroneous, but objectively unreasonable." *Waddington v. Sarausad*, 129 S. Ct. 823, 831 (2009) (internal citations omitted); *see also Schriro*

*v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold").

Pursuant to 28 U.S.C. § 2254(a), the district court shall entertain an application for the writ on behalf of a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The conditions set forth in § 2254(a) are satisfied when the district court concludes there has been a violation of federal law and that the violation played a causal role in the state prisoner's custody. *See Aleman v. Sternes*, 320 F.3d 687, 690 (7th Cir. 2003). When the court considers whether the conditions set forth in § 2254(a) are satisfied, the court is required under the AEDPA to review the state court's adjudication on the merits deferentially and set the state court decision aside only if the court committed unreasonable error. *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003). Findings of fact made by the state courts are presumed correct and are rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Foster v. Schomig*, 223 F.3d 626, 631 (7th Cir. 2000). With these standards in mind, the court proceeds to examine each of the claims in Williams's petition.

As an initial matter, the court finds that Williams is not entitled to relief on his allegations that the Brown County Circuit Court erroneously exercised its discretion when it denied his request for a free copy of the transcripts of the trial of Antwaine Sago ("Sago"), the other party to the crimes of which the jury convicted Williams.

This claim appears to be based on an alleged violation of Wisconsin state law rather than federal law. Therefore, Williams is not entitled to relief on this claim. The court will now address Williams's remaining three claims.

## I.     DUE PROCESS

First, the court must determine whether Williams is entitled to habeas relief based on his allegations that the state violated his right to due process when the prosecutor relied upon inconsistent theories to convict him and his co-defendant. Williams claims that during his trial the State presented evidence that Sago, his co-defendant, robbed and killed Brandon Martin and Ladell Smith, the two victims, and Williams was party to the crimes; while at Sago's trial, the State presented evidence that Williams shot and killed Martin and Smith and Sago was a party to the crimes. (Pet. 8). He contends that the prosecutor's use of two conflicting theories in convicting both co-defendants, specifically regarding who the actual shooter was, violated his constitutional right to due process. (*Id.*).

The Wisconsin Court of Appeals rejected Williams's due process claim because it found that the United States Supreme Court decision in *Bradshaw v. Stumpf* applied. In *Bradshaw*, much like the current case, the petitioner and his accomplice, Wesley, shot and killed a couple, the Stouts, during the course of an armed robbery. It was undisputed that the petitioner killed Mr. Stout, however, it was uncertain whether Mrs. Stout was also killed by the petitioner or whether she was killed by Wesley, using the petitioner's gun. The petitioner raised a similar challenge to his conviction as Williams does in his habeas petition – namely that the

prosecutor's use of conflicting theories of who the actual shooter was, during his trial and his co-defendant's trial, violated his right to due process.

The Supreme Court concluded that, under Ohio law, "the precise identity of the triggerman was immaterial to [petitioner's] conviction for aggravated murder." *Bradshaw*, 545 U.S. at 187. Therefore, the court found that proceeding at trial on different theories of who the shooter was did not violate due process. *Id.* The Wisconsin Court of Appeals applied that case's holding to Williams's challenge and found that under Wisconsin's party to a crime law, the exact identity of the shooter is also immaterial. *State of Wisconsin v. Kenneth L. Williams*, No. 2006AP1257 *15 (Wis. Ct. App. Jan. 29, 2007).[1] The court of appeals upheld the circuit court's determination that there was no due process violation because the circuit court found that Williams and his co-defendant Sago were accomplices in the armed robberies, that the homicides were a natural and probable consequence of the armed robberies; and that, therefore, the precise identity of the shooter was immaterial to Williams's ultimate conviction for first degree intentional homicide. *Id.*

Ultimately, the record fully supports the court of appeals' analysis as to the proper application of *Bradshaw* to the present case. The facts of the *Bradshaw* case and the present case are nearly indistinguishable and the state court's decision echoes the *Bradshaw* ruling. Therefore, this court does not find that the state court's decision is "contrary to" or "an unreasonable application of" clearly

---

[1] Specifically, the statute provides than when an individual has acted as party to a crime, the principal's intent is imputed to the accomplice when the crime is a natural and probable consequence of the crime that the accomplice has aided and abetted. Wis. Stat. § 939.05(2)(c).

established federal law as determined by the U.S. Supreme Court, or that the state court's determination of the facts was unreasonable in light of the evidence presented. Accordingly, petitioner's due process claim must be rejected.

## II.    SIXTH AMENDMENT RIGHTS

Williams also claims habeas relief on the theory that he was denied his Sixth Amendment right to present a defense and to confront the witnesses against him. This contention arises from the circuit court's denial of defense counsel's motion to strike the full testimony of one of the State's witnesses, Crystal Rose ("Rose"). During the cross-examination of Rose, the witness invoked her Fifth Amendment right against self-incrimination when asked a question about discovering "a couple of baggies with some small, little yellowing white rocks" in her residence prior to July 18, 2001 (the date of the murders and armed robbery). (Trial Tr. 157) (Docket #20). After Rose invoked her Fifth Amendment right against self-incrimination, Williams's trial counsel moved to strike all of her testimony. (*Id.* 160). He argued in a sidebar that the testimony of Rose in regard to what drug activity she observed in the house was relevant to how much cash one of the victims may have had available and to what extent he was involved in dealing drugs. (*Id.* 161). Defense counsel reasoned that if Rose asserted her Fifth Amendment right on that particular issue, her entire testimony should be stricken because it would impinge upon Williams's Sixth Amendment right to cross-examine witnesses. (*Id.*). The circuit court denied the motion. (Trial. Tr. 163). Upon reconsideration pursuant to petitioner's motion for post-conviction relief, the circuit court determined its earlier ruling should stand

because it found that the cross-examination of Rose on the issue of the victim's drug activity was already substantial, and, therefore, excluding one question asked of her would not undermine a fundamental element of Williams's defense or deprive Williams's of his right to confrontation. *State of Wisconsin v. Williams*, Case No. 01-CF-914 (April 18, 2006). Furthermore, the circuit court reasoned that Rose's testimony contained other highly relevant information because she was the first witness to arrive at the scene. *Id.* The circuit court, therefore, found the balance of her testimony highly probative. *Id.* The Wisconsin Court of Appeals upheld the circuit court's decision to deny the defense counsel's motion to strike because it also found that the exclusion of one piece of Rose's testimony, while admitting the rest of the testimony, did not undermine Williams's defense or violate his rights to confrontation.

The court finds that the Wisconsin courts did not unreasonably apply clearly established federal law in concluding that Williams's Sixth Amendment rights were not violated when Rose's testimony was excluded as to one question but admitted as to the rest. The Sixth Amendment, as interpreted by the Supreme Court, guarantees a criminal defendant the right to present a defense. *See Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). "[A]t a minimum, ... criminal defendants have the right ... to put before a jury evidence that might influence the determination of guilt." *Taylor v. Illinois,* 484 U.S. 400, 408 (1988). The Supreme Court has held unconstitutional the rigid application of state evidentiary rules when the application infringes upon the right to present witnesses in one's own defense or to cross-examine witnesses, particularly when that testimony is critical to the defense's theory

of the case. *Chambers,* 410 U.S. at 302-03 (holding that "the [rules of evidence] may not be applied mechanistically to defeat the ends of justice").

This constitutional right, however, is not without limits. The right may "bow to accommodate other legitimate interests in the criminal trial process." *Id.* at 295. For instance, the state is permitted to impose reasonable restrictions on the presentation of a defense, including state and federal rules "designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id.* at 302.; *see also United States v. Lea,* 249 F.3d 632, 642 (7th Cir.2001) (state courts have "broad latitude to fashion rules which operate to exclude evidence from criminal trials"). Exclusion of evidence does not abridge an accused's right to present a defense so long as the exclusion is not found to be "unconstitutionally arbitrary or disproportionate." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). The Supreme Court has held "the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." *Id.*

Furthermore, every defendant in a criminal case is entitled to confront his or her accusers. *Pointer v. Texas*, 380 U.S. 400, 406 (1965). A defendant's right to confront the witnesses against him "is central to the truthfinding function of the criminal trial." *Davis v. Alaska*, 415 U.S. 308 (1974). However, the right to confront and to cross-examine is not absolute and may, in appropriate cases, also bow to accommodate other legitimate interests in the criminal trial process. *Delaware v. Van Arsdall*, 475 U.S. 673 (1986).

It does not appear that the trial court's exclusion of Rose's testimony as to the one question regarding drug activity in her residence, and the circuit court's denial of defense counsel's motion to strike Rose's testimony in full, violated Williams's Sixth Amendment rights. First, the question posed of Rose regarding whether she had seen drugs at her residence before the date of the murders was found by the court to be not relevant to what drugs may have been at the residence on the date of the murder. This conclusion by the circuit court was not unreasonable or arbitrary, especially in light of the witness's invocation of her right against self-incrimination. Furthermore, the court found that other portions of Rose's testimony suggested that drugs were present in the apartment. Therefore, any argument that exclusion of the question would undermine a defense premised on drugs being present in the apartment is unpersuasive. Moreover, the fact that Williams did not get an answer to his question did not violate his rights to confrontation. As previously noted, Williams was able to cross-examine Rose on the subject of drugs and her testimony indicated that drugs were likely present at her apartment. Thus, Williams was not barred entirely from an inquiry into the presence of drugs at Rose's residence. He was merely barred from receiving an answer to one question that was deemed irrelevant and privileged. As such, the court maintains that the Wisconsin courts did not unreasonably apply federal law to Williams's Sixth Amendment claims.

## III. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Williams also claims his trial counsel provided ineffective assistance by failing to investigate, subpoena, or cross-examine various witnesses and potential

witnesses. The Sixth Amendment entitles a criminal defendant to effective assistance of counsel at trial. The appropriate standard for evaluating a claim of ineffective assistance of counsel is the test established in *Strickland v. Washington*. 466 U.S. 668 (1984). In order to prevail on a Sixth Amendment ineffectiveness claim, a petitioner must demonstrate the following: 1) that the lawyer's performance "fell below an objective standard of reasonableness"; and 2) that any ineffectiveness prejudiced the petitioner. *Strickland,* 466 U.S. at 688, 690-91; *see Winters v. Miller,* 274 F.3d 1161, 1167 (7th Cir. 2001). In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688-689. Moreover, to establish prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.,* 466 U.S. at 694.

The AEDPA requires a habeas petitioner alleging ineffective assistance of counsel to demonstrate more than that he would have satisfied *Strickland's* test if his claim was being analyzed in the first instance; the petitioner must show that the state courts applied *Strickland* to the facts of his case in an objectively unreasonable manner. *Bell v. Cone,* 535 U.S. 685, 698-99 (2002); 28 U.S.C. § 2254(d)(2). Additionally, it is extraordinarily difficult to show that a state court unreasonably applied *Strickland* because *Strickland* is a deferential test that presumes the reasonableness of counsel's decisions. *Strickland*, 466 U.S. at 689. Accordingly,

only a clear error in applying *Strickland's* standard will support a writ of habeas corpus. *Holman v. Gilmore,* 126 F.3d 876, 882 (7th Cir.1997).

In this case, Williams sets forth five specific claims to demonstrate ineffectiveness of trial counsel. The court will address each claim in turn.

### A.    Failure to Introduce a Hotel Receipt

First, Williams contends that his attorney's failure to introduce into evidence a hotel receipt, which would have established an alibi for Williams, constituted ineffective assistance of counsel. Both the circuit court and the court of appeals engaged in the same analysis under *Strickland* and found that the failure of Williams's trial counsel to introduce the hotel receipt did not constitute deficient performance and, even if it did, the petitioner suffered no prejudice as a result.

Williams contends the hotel receipt would have corroborated his alibi that he was at a hotel with Nicole Wheelock ("Wheelock") on the night of July 17, 2001, and the morning of July 18, 2001. (Pet'r's Br. 1). On the second day of defendant's trial, Wheelock testified that she moved out of her apartment on July 17, 2001, and spent that night with Williams at the Day's Inn hotel. (Trial. Tr. 453). Wheelock then testified that she and Williams stayed together at the hotel until checkout time the next day – 11:00 or 12:00 a.m.  (Trial Tr. 453).  However, Wheelock's testimony regarding Williams's location on the morning of July 18, 2001, was directly contradicted by the testimony of another witness, Sabrea Hill ("Hill").  Hill testified that the defendant was at her residence with Sago at 5:00 a.m. on July 18, 2001, and that she overheard the petitioner planning the murders. (Trial Tr. 346).

Wheelock's testimony regarding what day she moved out of her apartment was also contradicted by her landlord at the time, who testified that he drove by the apartment on July 16, 2001, and it appeared that Wheelock had already vacated the premises. (Trial Tr. 442).   During the State's rebuttal closing argument, the prosecutor suggested that Wheelock and the defendant may have spent the night of July 16, 2001, at the hotel, as opposed to July 17, 2001.  (Trial Tr. 567-68).  Accordingly, the defendant argues that his trial counsel's failure to introduce a hotel receipt from the Day's Inn – which he contends would have established he was at the hotel the night of July 17, 2001 – was deficient and prejudiced the defendant. (Pet'r's Br. 1). Williams further asserts that his trial counsel was ineffective because he did not investigate the matter. (Pet'r's Br. 1).

The Wisconsin courts addressed with care each of Williams's contentions in this respect.  The state courts found, and the record reflects, that Williams's trial counsel did argue before the jury that the defendant and Wheelock were together at the Day's Inn on the night of July 17, 2001.  Therefore, even though no receipt was introduced into evidence, Wheelock's testimony conveyed the alibi to the jury, thereby demonstrating that trial counsel did not altogether ignore Williams's account of the hotel stay.  Williams's attorney, in responding to these accusations, stated that further investigating into the hotel stay "would have been of questionable utility" since there would have been no way to confirm, other than through Wheelock's testimony, that Williams was at the hotel with her. *State of Wisconsin v. Williams*, No. 2006AP1257, *8 (Wis. Ct. App. 2006).  This appears to be a fair assessment since

the receipt would have supported the fact that Wheelock stayed at the hotel on July 17, 2001, but it would not have demonstrated Williams's presence at the hotel on that night. As such, it is apparent that Williams's counsel conducted some investigation of the matter and, in the end, made a tactical decision not to pursue the alibi further. Accordingly, the state courts found that Williams did not show that his counsel's omission in this regard was "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Regardless, the state courts continued their *Strickland* analysis by finding that even if counsel's conduct was deficient, Williams was not prejudiced as a result. The court of appeals reasoned that "it is highly unlikely that a hotel receipt would have made [Wheelock's] testimony more believable." *State of Wisconsin v. Williams* at *7. Both courts further explained that the hotel receipt would only demonstrate that Wheelock rented the room that night, it would not indicate that Williams was actually at the hotel as well. *Id.* The receipt also would not have rebutted Hill's testimony stating that Williams was at her house in the early morning of July 18, 2001. Lastly, all the evidence indicated the murders likely occurred on the late evening of July 18, 2001, and, therefore, it is not reasonable to suggest that a hotel receipt from the night before would have resulted in a different outcome at trial.

This court does not find anything objectively unreasonable about the state courts' application of *Strickland* to the facts of Williams's case. Both the circuit court and the court of appeals articulated their reasoning and demonstrated that counsel's decision not to introduce the hotel receipt was reasonable considering all the

circumstances. *Strickland*, 466 U.S. at 690. Indeed, in light of Hill's testimony and the landlord's testimony contradicting Wheelock's testimony as to Williams's whereabouts, it is reasonable that defense counsel decided not to pursue the alibi further, including introduction of a hotel receipt. The state courts went a step further as well, and reasonably demonstrated that introduction of the hotel receipt did not prejudice the defendant. Accordingly, this court finds nothing in the record to indicate the state courts clearly erred in their application of *Strickland* to the facts of this case.

### B. Failure to Investigate, Subpoena, or Cross-Examine

The petitioner next alleges that his trial counsel was ineffective when he failed to investigate, subpoena, or cross-examine a number of potential witnesses. Williams asserts that these witnesses could have provided critical and significant testimony which would have supported his defense and contradicted evidence put forth by the State. Again, the state courts were required to determine, in light of all the circumstances, whether counsel's decisions in this regard were objectively reasonable and, if not, whether counsel's omissions prejudiced the petitioner.

### 1. Adrian Thomas

Williams first alleges that his trial counsel was deficient in failing to investigate and subpoena Adrian Thomas ("Thomas"). Specifically, the petitioner contends that Thomas could have provided testimony undermining several of the State's theories, most significantly that the petitioner was the link between Sago and one of the victims, Martin. (Pet'r's Br. 1-2). Williams also argues that Thomas's testimony would

support the petitioner's claims that Sago was already in Martin's apartment when he arrived. (Pet'r's Br. 1-2). To support his claims, Williams refers to statements given by Thomas to a police detective on July 23, 2001, in which Thomas stated that on the day of the murders Martin had been with someone named "T," and that Kenny, who was usually with them, was not there. (Pet'r's Br. 1-2). Evidence presented in the case established that Sago was often referred to as "T."

The circuit court, however, noted that the same police report in which these statements were made, also revealed that Thomas believed both Kenny and "T" were involved in the murders of Martin and Smith, the other victim. Thus, the court concluded that Thomas's statement was actually damaging to the petitioner's defense in that Thomas expressly implicated Williams in the murders. Based on this conclusion, it appears that both state courts found it was reasonable for trial counsel to decide not to have Thomas testify even if some of his testimony would have undermined a few of the State's theories. Furthermore, the state courts found that Williams was not prejudiced by the failure to offer Thomas's testimony. Even if his statements undermined the State's theory as to the link between the victim and Sago, Thomas's adverse testimony implicating Williams in the murders would also have been available and may very well have been prejudicial to Williams.

This court agrees that Williams's arguments in this respect are unpersuasive. It was reasonable for his trial counsel to refrain from offering Thomas's mitigating statements because of the risk of exposing the jury to Thomas's adverse testimony. Furthermore, the court is unconvinced that, but for the trial counsel's failure to offer

Thomas's testimony, the result of the trial would have been different.  Nothing in the record warrants a determination otherwise.  Therefore, Williams's ineffectiveness claim in this respect is denied.

## 2.    Failure to Cross-Examine Tara Hucek

Williams next asserts that trial counsel was ineffective in failing to cross-examine Tara Hucek ("Hucek") with regard to statements Sago made to Hill about the gun used in the homicide and Sago's knowledge that Martin had a lot of money. Williams argues that Sago's incriminating statements were admissible hearsay under Wis. Stat. § 908.045(4) as statements against interest. (Pet'r's Br. 2).

However, this argument is unavailing and the state courts reasonably rejected Williams's claim of ineffectiveness in this regard.  Even assuming these statements are admissible hearsay under Wis. Stat. § 908.045(4), and that Williams's counsel was deficient in failing to cross-examine Hucek on these points, the error did not result in prejudice to the petitioner.  First, as the circuit court noted, an enormous amount of evidence already linked the petitioner to the crimes and established his guilt, if not as the primary actor, then as a party to the crime.  Therefore, simply establishing that the gun belonged to Sago would not have been enough to overcome the evidence already weighing against the petitioner.  Additionally, the issue of whether Sago was "there" or not, so as to have knowledge of the extent of Martin's available cash, was already established. Thus, Hucek's statement in this regard would not have added anything new for the jury to consider.  It would have simply reinforced what the jury already knew – that the victims were robbed, and

ultimately killed, for their money. Because the state courts were not unreasonable in their application of *Strickland* to the facts of the case, the court must find that Williams has failed to demonstrate he is entitled to habeas relief as to this claim.

### 3. Failure to Investigate and Subpoena Eugene Ware

Williams also argues that his counsel was ineffective in failing to investigate and subpoena Eugene Ware. He argues that Ware's testimony would have corroborated Williams's statements, as well as Wheelock's testimony, that Williams had sold his gun to Sago a month before the crimes were committed. Yet again, the court notes that whether or not Williams owned the gun is irrelevant to his guilt because the state courts found that Williams's own statements demonstrated that a gun was present with Sago and him when the murders occurred and the gun was used to kill the victims. Moreover, under Wisconsin law, it is immaterial who the shooter was because "[w]hoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although the person did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act." Wis. Stat. § 939.05(1). Consequently, the courts reasoned that failure to introduce irrelevant testimony cannot be considered deficient performance and that it is highly unlikely that Ware's testimony would have changed the result of the trial. The court finds nothing in the state courts' *Strickland* analysis that is unreasonable or contrary to federal law. Therefore, this court refuses to grant petitioner habeas relief as to this claim.

### 4.    Failure to Investigate and Subpoena Isaac Williams

Lastly, the petitioner argues that trial counsel was ineffective in failing to investigate and subpoena Isaac Williams. Petitioner contends that Isaac Williams's testimony could have provided a reasonable explanation as to why the defendant's car was parked away from the crime scene. (Pet'r's Br. 3). Williams states that Isaac Williams had the car on the night of the murders and parked it at his girlfriend's mother's house, which happened to be approximately one block away from Martin's house. (Pet'r's Br. 3). He claims this information, if testified to by Isaac Williams, would have undermined the State's theory that Williams parked the car a block away from the crimes as part of the plan to use the car as a get-away car. (Pet'r's Br. 3). The Wisconsin courts found that Isaac Williams gave contradictory statements regarding Williams's car that was parked near, but not at, the crime scene. Isaac Williams told the police he had been driving the petitioner's car and parked it at his girlfriend's mother's house. However, he told the defense investigator he had been driving his own car. The state courts concluded that such contradictory statements undermined Isaac Williams's credibility and it was reasonable for trial counsel to opt not to elicit testimony from Isaac Williams. This court finds nothing unreasonable about this conclusion in light of *Strickland*. Determining which evidence to present and which witnesses to testify is a strategic decision for defense counsel to make in light of all the circumstances. Here, there is nothing in the record to suggest that defense counsel's decision in this regard was deficient. Furthermore, it does not appear that failure to investigate and subpoena Isaac Williams regarding the

placement of the petitioner's car on the night of the murders would have any probability of changing the result of the jury's determination of guilt. Therefore, the court finds that petitioner's claim for habeas relief based on ineffective assistance of counsel must be denied.

## CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), the applicant must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (internal citations omitted). While Rule 11(a) permits a district court to direct the parties to submit arguments on whether a certificate of appealability should issue, additional argument is not necessary here. Given the record before the court, no reasonable jurist would find it debatable whether this court was correct in its ruling on the present motion. As a consequence, the court must deny a certificate of appealability as to the petitioner's motion.

Accordingly,

**IT IS ORDERED** that the petitioner's "Petition for Writ of Habeas Corpus" (Docket #1) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to the petitioner's motion be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 29th day of November, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge